IN THE UNITED STATES DISTRICT COURT
FOR THE MASSACHUSETTS

----------------------------------------X
                                        )
IN RE:  Request from Belgium            )
        Pursuant to the Treaty          )
        Between the United States of    )  No. _____
        America and Belgium on Mutual   )
        Assistance in Criminal Matters  )      04-mc-10019-RCL
        in the Matter of                )
        Patrick Delcour                 )
                                        )
----------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

The United States is seeking an order appointing a Commissioner to obtain evidence requested by Belgium, pursuant to the Treaty on Mutual Legal Assistance in Criminal Matters Between the United States of America and Belgium, in force January 28, 1988, ( ___ U.S.T. ___ ) [hereinafter referred to as "the Treaty"], in its Treaty Request relating to a criminal matter. The Treaty obligates the United States and empowers this Court to provide assistance to Belgium in criminal matters. This Court is also empowered to provide assistance by the federal statute governing the provision of assistance in foreign judicial proceedings generally, 28 U.S.C. §1782, and by its own inherent authority, In re Letter Rogatory from the Justice Court, District of Montreal, Canada, 523 F.2d 562 (6th Cir. 1975).

A treaty constitutes the law of the land. U.S. Const. art. VI. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. Asakura v. City of

Seattle, Washington, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801).

The United States and Belgium entered into the Treaty for the purpose of promoting judicial cooperation in criminal matters. The Treaty obliges each state to provide assistance in criminal investigations and proceedings. Art. 1(1). The assistance covered includes producing documents, taking testimony or statements, locating witnesses, and executing search and seizure requests. Art. 1(2).

The Treaty provides, at Article 5(3), that:

> Requests shall be executed in accordance with the laws of the Requested State except to the extent that this Treaty provides otherwise. However, the method of execution specified in the request shall be followed except insofar as it is prohibited by the laws of the Requested State.

The Treaty further provides, at Article 8(1), that:

> A person in the Requested State from whom testimony or evidence is requested pursuant to this Treaty shall be compelled, if necessary, to appear and testify or produce items, including documents and records. A person who gives false testimony, either orally or in writing, in execution of a request shall be subject to prosecution in the Requested State in accordance with the criminal laws of that State.

The Treaty *requires* the two states to provide assistance to each other in investigations and court proceedings covered by the Treaty. However, were no treaty in force, a federal district court would nonetheless be empowered, within its discretion, to order the production of evidence under 28 U.S.C. § 1782, the statute governing the provision of assistance in foreign judicial

2

proceedings generally. Under Section 1782, any interested person, whether a foreign country, a foreign judicial authority, or a litigant in a foreign court, may seek assistance regardless of the availability of reciprocal assistance from the foreign jurisdiction. S. Rep. No. 1580, 88th Cong., 2d Sess. 1, reprinted in 1964 U.S. Code Cong. & Admin. News 3872.

As stated in the Letter of Transmittal from the President to the Senate, the Treaty is intended to be self-executing. Treaty Doc. 106-16, Nov. 10, 1999. As such it utilizes the existing authority of the federal courts, particularly 28 U.S.C. § 1782. Pursuant to Section 1782, a court may appoint a Commissioner to gather evidence on behalf of the court and to submit the evidence, through appropriate channels, to the requesting nation. Section 1782 further provides that: "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

Thus, the Commissioner has the power to receive the testimony or statements of witnesses and the production of documents or other things, and the court may prescribe the practice and procedure for taking the testimony or statements or producing documents or other things. One such procedure may be the use of the attached form, entitled Commissioner's subpoena, to obtain the requested testimony or statements and the requested documents or other things. In addition, it is customary that requests for international legal assistance in criminal matters

3

be executed without notification, by the requested state, to the target of a foreign criminal investigation or a foreign criminal defendant, unless a contrary intention is apparent from the nature or content of the request. If a notice is required or contemplated, the requesting authority usually makes the notice itself or explicitly asks in the body of the request that a certain notice be made incident to execution. For these reasons, it is requested that this Court authorize the use of Commissioner subpoenas and prescribe that the execution of the request proceed without notice to the targets or defendants in the foreign criminal proceedings.

The instant Treaty Request has been made by the Court of First Instance in Kortrijk, Belgium, invoking a Request for Assistance under Article 4 of the Treaty, in connection with a current criminal case memorandum number 20.26.2381 being conducted by M. Allegaert, the Investigating Magistrate of that court.

The facts of this case show that Patric Delcour attempted to open an account containing between $10 and 30 million at the Kredietbank in Kortrijk, Belgium on or about January 19, 1997. Delcour informed the bank that he would be accompanied by a representative of Belsag A.G. He then faxed a bank certificate to Kredietbank in the name of Belsag, prepared by Liechtenstein-based Salzburger Kredit-Und Wechselbank A.G. A check with Salzburger Kredit-Und determined that this certificate was false. It was later revealed that the bank employee who signed the

4

certificate, Christian Sailer, had no authority to do so, and that such documents must always be signed by tow competent persons. Moreover, on January 30, 1997, Richard Peters, a United States lawyer, faxed Kredietbank two additional documents, containing the names Moonstone Trading, LTd. and M. Helmut Konig, to confirm the bank certificate.

Mr. Peters was interviewed once in connection with the Belgian request, but the Belgian authorities concluded that he did not address the essential questions necessary to determine the facts of what transpired involving Mr. Delcour. Belgium is therefore requesting that further questioning occur, and has provided a list of specific questions to be asked.

Mr. Peters was convicted of bank fraud, perjury, money laundering and making false statements. He was sentenced to 57 months in prison, and was allegedly released in March of 2002. He is believed to be residing at 16C Forest Acres Drive, Bradford, Massachusetts.

Accordingly, to execute this request, the government moves this Court to issue the attached Order appointing Assistant United States Attorney Thomas E. Kanwit as commissioner, and authorizing him to take the actions necessary, including the issuance of Commissioner's subpoenas, to obtain the evidence requested, and to adopt such procedures in receipt of the

5

evidence as are consistent with the intended use thereof in Belgium.

                          Respectfully submitted,

                          MICHAEL J. SULLIVAN
                          UNITED STATES ATTORNEY

By: _____
     THOMAS E. KANWIT
     Assistant United States Attorney
     United States Attorney's Office

January 14, 2004     J. Joseph Moakley Courthouse
     Suite 9200
     1 Courthouse Way
     Boston, MA 02210
     (617) 748-3100